UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN MICHIGAN

BARBARA CLARK,

    Plaintiff,

v.

    Case No.

    Hon.

TROY HOTEL SUITES, INC.

    Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
RYAN FOWLER  (P84210)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
Phone: (248) 540-6800
Fax: (248) 540-6814
sbatey@bateylaw.com
rfowler@bateylaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Barbara Clark, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant states the following:

    1.    Plaintiff, Barbara Clark, is a resident of the City of Oak Park, County of Oakland, and the State of Michigan.

1

2. Defendant, Troy Hotel Suites, Inc., is a domestic profit corporation, whose registered agent is Neil Abro, whose registered office mailing address is 2600 Auburn Road Suite 220, Auburn Hills, Michigan 48326, and who is duly authorized to do business in the County of Oakland, and the State of Michigan.

3. The events producing the original injury occurred in the County of Oakland, State of Michigan, and jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4. Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination/harassment consisting of gender and national origin or discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq. which resulted in both emotional and economic damages to Plaintiff.

5. The amount in controversy exceeds $75,000.00 and is otherwise within the Jurisdiction of this Court.

## GENERAL ALLEGATIONS

6. Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7. Plaintiff began her employment with Defendant in or around 2013 and

initially held the position of a night auditor.

8. In or around 2014, Plaintiff was promoted to the position of General Manager.

9. The General Manager position was paid hourly, and Neil Abro told Plaintiff that she would have "to prove herself" in the role.

10. As General Manager, Plaintiff was responsible for hiring, payroll, and for assisting in promotion decisions.

11. During Plaintiff's tenure as General Manager, she helped oversee the hiring of a new Sales Manager.

12. The Sales Manager position was awarded to a Caucasian woman, who immediately started as a salary employee, not hourly.

13. The new Sales Manager was never told by Defendant that she had to "prove herself" in the way Abro had previously told Plaintiff.

14. Moreover, Plaintiff, an African American woman with more seniority and experience than the Sales Manager, was still paid hourly.

15. Plaintiff spoke directly to Neil Abro regarding the pay differences, but was told to wait and that Abro would "take care of her."

16. Plaintiff was eventually told that she would be transitioned to a salary instead of hourly pay.

17. However, after promising the pay change, Neil Abro came to the

property to inform Plaintiff that he misspoke about giving her salary pay, and that he was no longer obligated to give her the promised change to salary pay.

18. Plaintiff told Abro that she believed she deserved to be a salary employee, as hotel reviews had been positive, the hotel was running smoothly, and there were no performance issues.

19. Plaintiff also pointed out that the new Sales Manager had immediately started as a salary employee, even though she had no prior sales experience.

20. As General Manager, Plaintiff was also instructed to issue a raise to the Housekeeper Supervisor after the employee had attempted to quit and walk off the job in front of Plaintiff.

21. While serving as General Manager and in charge of payroll duties, Plaintiff was made aware that Caucasian and Chaldean employees received pay increases.

22. However, Plaintiff, an African American woman, was not extended any similar pay increase or transitioned to salary.

23. During her employment, Plaintiff was told numerous times by Neil Abro that "she didn't act black."

24. When Plaintiff questioned Abro's comment, he would not clarify.

25. On July 16, 2019 Plaintiff was wrongfully terminated by Andy Abro, the brother of Neil Abro.

26. Andrew Abro informed Plaintiff that she was being terminated due to poor job performance.

27. Prior to being informed that she was being terminated, Plaintiff had weekly meetings with Neil Abro, wherein she was always told that her performance was satisfactory.

28. Plaintiff asked why Andrew Abro was the person terminating her, when Andrew had always maintained that all business decisions were made and carried out by Neil Abro.

29. After Plaintiff questioned the termination, Andrew Abro offered Plaintiff the chance to remain in Defendant's employment, but as a Front Manager.

30. Plaintiff accepted this position to avoid being completely terminated.

31. Plaintiff returned to work in the new role on July 23, 2019.

32. Upon her return, Plaintiff was again notified that she was being terminated.

33. Plaintiff was shocked and embarrassed, as she had just accepted the role of Front Manager and did not even have the opportunity to work in the role.

34. After being terminated for the second time, Andrew Abro began to text and Facetime Plaintiff's personal phone.

35. Abro would message Plaintiff to ask her about passwords and to apologize for the termination.

36. Andrew Abro also messaged Plaintiff and told her that he would give her a great job reference, despite him having previously claimed that her job performance was the reason for her termination.

37. Defendant's actions were intentional or were carried out with reckless indifference towards Plaintiff's rights.

38. On October 9, 2020, Plaintiff was issued a Right to Sue Letter by the EEOC.

## COUNT I
## NATIONAL ORIGIN/NATIONAL ORIGIN OR DISCRIMINATION IN VIOLATION OF TITLE VII

39. Plaintiff incorporates by reference paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40. Pursuant to Title VII of Civil Rights Act of 1964, Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment from their employer and/or supervisors based upon national origin or.

41. Defendant's conduct in treating Plaintiff differently than similarly situated employees was based on Plaintiff's national origin or, gender, and nationality.

42. Defendant created a hostile work environment for Plaintiff as a result of Plaintiff's national origin or, gender, and her complaints of unfair treatment.

43. Defendant was Plaintiff's employer within the meaning of Title VII.

6

44. Plaintiff was subjected to repeated and continuous discriminatory treatment based upon her gender and national origin or, including adverse employment action and two wrongful terminations.

45. Defendant, its employees, and agents harassed Plaintiff to the point where her status as an employee has been detrimentally affected by telling her that she did not "act like a black woman", refusing to award her pay that was similar to Caucasian employees, and terminating her twice.

46. Plaintiff is entitled to exemplary, compensatory, and punitive damages pursuant to Title VII as a result of each and every violation of the act, including costs and reasonable attorney's fees.

47. Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

    a. Violating the laws against discrimination by engaging in national origin or and gender discrimination in the workplace;

    b. Retaliating against employees who make complaints of discrimination;

    c. Failing to take serious and corrective action when informed by Plaintiff of the conduct towards her;

    d. Failing to prevent or stop discrimination against Plaintiff causing a hostile work environment; and

    e. Taking adverse employment action against Plaintiff due to her national origin or and gender.

48. Defendant owed Plaintiff a duty to adequately advise their employees

to refrain from discriminating against employees.

49. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of the Defendant.

50. Because of the unlawful conduct of Defendant, and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT II
## RACIAL/NATIONAL ORIGIN/GENDER DISCRIMINATION IN VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCLA 37.2201, *et seq*

51. Plaintiff incorporates by reference paragraphs 1 through 50 of the Complaint as though fully set forth herein.

52. Plaintiff was subjected to unwelcome conduct including adverse employment action and termination due to her race, national origin or gender.

53. The ongoing and continuing unwelcome conduct was intended to and did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff.

54. Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, et seq. Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation, including termination from her employer and/or supervisors based upon her race, national origin or gender.

55. Plaintiff's race, national origin and gender were all factors in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

56. Plaintiff was subjected to repeated and continuous discriminatory treatment, up to and including termination, based upon her race, national origin and gender by Defendant, to the point where her status as an employee has been detrimentally affected by Defendant and Plaintiff has been subjected to work in a hostile work environment.

57. Plaintiff is entitled to exemplary and compensatory damages pursuant

58. to Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, et seq. as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

59. Defendant created an offensive and hostile work environment against Plaintiff as a direct result of Plaintiff's national origin or by reason of the following acts and/or omissions:

    a. Violating the laws against discrimination by engaging in race, national origin and gender discrimination in the workplace;

9

    b. Taking adverse employment action against Plaintiff based upon her race, gender and national origin;

    c. Preventing Plaintiff from having full and fair opportunities to advance in her position based upon her race, national origin and/or gender; and

    d. Creating a hostile work environment for Plaintiff by discriminating against her and harassing her due to her race, national origin and/or gender.

63. Defendant owed Plaintiff a duty to refrain from discriminating against her, harassing her and treating her differently as a direct result of her race, national origin and/or gender.

64. Defendant breached and violated their duties owed to Plaintiff, by reason of the following acts and/or omissions:

    a. Failing to screen and place in supervisory positions, persons who would be capable of being competent and law-abiding supervisors, and with particular reference to enforcing laws against discrimination in the workplace;

    b. Giving supervisory authority to persons who were known to have propensities as would make them unfit to serve in the capacity of supervisor over employees;

    c. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace; and

    d. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees.

65. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of Defendant.

66. Because of the unlawful conduct of Defendant, its agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 540-6800
sbatey@bateylaw.com

Dated:  December 29, 2020

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Barbara Clark, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

                              Respectfully submitted,

                              **BATEY LAW FIRM, P.L.L.C.**

                        BY: /s/Scott P. Batey
                              SCOTT P. BATEY (P54711)
                              Attorney for Plaintiff
                              30200 Telegraph Road, Suite 400
                              Bingham Farms, MI  48025
                              (248) 540-6800
                              sbatey@bateylaw.com

Dated:  December 29, 2020